PARAGON CABLE TELEVISION
INC., Petitioner,

v.

FEDERAL COMMUNICATIONS COM-
MISSION and United States of
America, Respondent,

Wisconsin Bell, Inc., City of
Brookfield, Intervenors.

No. 85–1020.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 19, 1987.

Decided June 30, 1987.

Harold R. Farrow, Washington, D.C., for petitioner. Jacob W. Mayer, Washington, D.C., was on the brief for petitioner. Alan R. Plutzik and Bruce G. Forrest, Washington, D.C., also entered appearances for petitioner.

Gregory M. Christopher, Counsel, F.C.C., with whom Diane S. Killory, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, F.C.C., Robert B. Nicholson and Donald S. Clark, Dept. of Justice, Washington, D.C., were on the brief for respondents. Margaret G. Halpern, Dept. of Justice, Washington, D.C., also entered an appearance for respondents.

Harold H. Fuhrman, Milwaukee, Wis., was on the brief for intervenor, City of Brookfield.

Gregg H. Levy, Washington, D.C., was on the brief for intervenor, Wisconsin Bell, Inc.

Robert B. McKenna, Washington, D.C., was on the brief for amicus curiae, the Mountain States Tel. and Tel. Co., urging the denial of the petition of review.

Peyton G. Bowman, III and Daniel J. Wright, Washington, D.C., were on the brief for amicus curiae, Texas Power & Light Co., urging the denial of the petition of review.

Before BORK and STARR, Circuit Judges, and RE,* Chief Judge, United States Court of International Trade.

Opinion Per Curiam.

PER CURIAM:

This case presents a challenge to rulings made by the Commission in a consolidated review of decisions by the Common Carrier Bureau in two complementary proceedings. First, the Commission rejected a complaint filed by petitioner under 47 U.S.C. § 224 (1982), in which petitioner alleged it had been unreasonably denied pole attachments by the local telephone company, Wisconsin Bell, Inc. (formerly Wisconsin Telephone Co.), in Brookfield, Wisconsin. Second, the Commission approved, over petitioner's objections, an application filed by Bell pursuant to 47 U.S.C. § 214 to construct and operate a broadband cable system. Upon review, we fail to discern error in either ruling and accordingly deny the petition for review.

*First.* Section 224 confers authority upon the FCC to ensure that the "rates, terms, and conditions for pole attachments" are "just and reasonable." In accordance with this mandate, the Commission entertains complaints alleging that "rates, terms, and conditions for pole attachments" are unreasonable. Petitioner filed such a complaint after Bell denied it access to make additional pole attachments in Brookfield, where petitioner desired to expand its cable service.

Bell's asserted reason for its refusal was that petitioner's franchise from the City of Brookfield had been revoked and that the Pole Attachment Agreement between peti-

tioner and Bell required petitioner to possess and furnish proof of a valid franchise. *See* Pole Attachment Agreement, Article IV, *reprinted in* Joint Appendix (J.A.) at 1, 2.

The Common Carrier Bureau initially ruled in petitioner's favor because Bell failed to provide evidence that the franchise had actually been revoked. *See RVS Cablevision, Inc. v. Wisconsin Bell, Inc.,* File No. E–84–9 (Common Carrier Bureau June 15, 1984), *reprinted in* J.A. at 338. But after Bell submitted a copy of the city ordinance formally revoking petitioner's franchise, the Bureau reversed itself and held that insistence on a franchise was reasonable. *RVS Cablevision, Inc. v. Wisconsin Bell, Inc.,* File No. E–84–9 (Common Carrier Bureau Aug. 30, 1984), *reprinted in* J.A. at 404. Accordingly, the Bureau refused to order Bell to make pole attachments available to petitioner. The full Commission affirmed. *See RVS Cablevision Inc. v. Wisconsin Bell, Inc.,* FCC No. 84–618 (Comm'n Dec. 13, 1984), *reprinted in* J.A. at 514.

Petitioner attacks this decision on a number of grounds, but its primary charge is that Brookfield's revocation was illegal for a variety of reasons—for example, petitioner invokes such diverse areas of the law as contract, First Amendment, and antitrust—and that the Commission erroneously assumed the validity of the City's revocation ordinance. We disagree.

■■■ The Commission's ruling that possession of a valid franchise is a reasonable pre-condition for pole attachment falls far short of arbitrary or capricious. To the contrary, in light of Congress' recent reaffirmation of the franchising system, *see* Cable Communications Policy Act of 1984, 47 U.S.C. § 541, the FCC's approach is entirely reasonable. Having decided that a franchise is a valid prerequisite, the Commission reasonably refused to enter the fray and address petitioner's claim that it nonetheless continued to possess a valid franchise by virtue of the fact that the

---

City's purported revocation was illegal.[1] That issue was—and is—being litigated in federal district court in Wisconsin. Until that case is resolved, it is appropriate for the Commission to employ a presumption of validity with respect to the franchising authority's actions *vis-a-vis* the franchise.[2] *Cf. Flemming v. Nestor*, 363 U.S. 603, 617, 80 S.Ct. 1367, 1376, 4 L.Ed.2d 1435 (1960) (presumption of constitutionality of legislative acts).[3]

*Second.* The Commission has asserted jurisdiction over the cable television activities of telephone companies, requiring them, *inter alia*, to obtain a certificate of public convenience and necessity pursuant to section 214 of the Communications Act, 47 U.S.C. § 214, before constructing a broadband cable system. Bell filed an application for such a certificate, which was approved in due course by the Common Carrier Bureau, *see In re Wisconsin Bell, Inc.*, File No. W–P–C–5348 (Common Carrier Bureau Aug. 30, 1984), *reprinted in* J.A. at 408, and the full Commission, *see RVS Cablevision Inc. v. Wisconsin Bell, Inc.*, PCC No. 84–618 (Comm'n Dec. 13, 1984), *reprinted in* J.A. at 514. Petitioner

intervened and objected to Bell's application on three principal grounds: (1) Bell's application was not in the public interest because of serious antitrust problems, which at minimum required the Commission to hold a hearing; (2) Bell had failed to comply with the Commission's rules, namely sections 63.54 and 63.57; and (3) the Commission's proceedings were tainted by *ex parte* contacts. The Commission rejected all of these arguments, and petitioner renews them before this court. We similarly reject the claims.

To be sure, antitrust issues are of clear relevance in the Commission's assessment of the public interest under section 214. *Cf. United States v. FCC*, 652 F.2d 72, 81–82 (D.C.Cir.1980) (en banc) (antitrust considerations are an important element of a public interest standard). But with respect to antitrust issues, petitioner's primary assertion is that Bell displayed anticompetitive behavior by denying it pole attachments. As we have already noted, however, that refusal was justified, under the Commission's analysis, in view of the fact that the refusal was premised on the lack of a valid franchise. Should the status

---

**1.** Petitioner also argues that, franchises aside, it does in fact operate in Brookfield, and thus should be able to make pole attachments. As partial support for this contention, petitioner notes that the City sought an injunction from the district court in Wisconsin to prohibit petitioner from operating in Brookfield, but no such injunction was forthcoming. These assertions may be relevant in the district court action, but they do not change the fact that, as we have noted, the franchising system, despite petitioner's protestations to the contrary, has substantial vitality. *Cf.* 47 U.S.C. § 541. Accordingly, in the present environment, we agree with the Commission's view that it was reasonable for Bell to insist on an actual franchise.

**2.** Petitioner argues that the Commission's use of a presumption of validity conflicts with earlier Commission precedent, namely, *Tele-Communications, Inc. v. South Carolina Electric & Gas Co. (TCI)*, File No. PA–83–0027 (Common Carrier Bureau Apr. 19, 1985), *reprinted in* J.A. at 522. In that decision, petitioner correctly recounts, the Bureau required a utility to make pole attachments available, despite the fact that the cable company's franchise had been revoked. But what petitioner neglects to mention is that the two cases are completely and readily distinguishable. The franchise revocation in

*TCI* was to take effect only at a specified future date. The Bureau merely held that the utility could not substitute its judgment for the franchising authority by removing pole attachments before such time as the franchising authority's revocation actually took effect, which it had not as of the time of the Bureau's decision. This case presents the quite different situation of a revocation that has already taken place. Thus, we agree with the Commission's discussion distinguishing *TCI*. *See RVS Cablevision, Inc. v. Wisconsin Bell, Inc.*, FCC No. 85–348, slip op. at 4 n. 7 (Comm'n July 11, 1985), *reprinted in* J.A. at 531, 534.

**3.** *Amici curiae* argue that the Commission lacks jurisdiction to compel a utility to make pole attachments available. Rather, *amici* contend, the Commission's role is limited to ensuring that once a utility has agreed to make such attachments available, the rates, terms, and conditions are reasonable. *See* Brief for Amici Curiae the Mountain States Telephone and Telegraph Company, *et al.* Since the FCC did not order Bell to make pole attachments available, this case obviously does not present a situation implicating *amici's* argument. Inasmuch as we agree with the Commission's decision, we need not consider the issue that *amici* invite us to resolve.

of petitioner's franchise change by virtue of the district court action in Wisconsin, the Commission has indicated it would revisit the issue. Until such time, petitioner can make nothing of Bell's refusal to permit pole attachments.

Petitioner's remaining antitrust arguments appear to be that, in general, permitting telephone companies to construct cable systems raises significant antitrust problems. Whether meritorious or not, those concerns have already been addressed in a comprehensive rulemaking. In that proceeding, the Commission developed rules prohibiting telephone companies from engaging in cable television service in their telephone service area, either directly or through affiliates. The rules do, however, permit telephone companies to provide channel distribution services to *unaffiliated* companies on a nondiscriminatory basis, provided that the telephone company first offers to make pole attachments available (which would permit the cable operator to construct its own system in lieu of using the distribution services of the telephone company). *See* 47 C.F.R. §§ 63.54, 63.57; *Section 214 Certificates*, 21 F.C. C.2d 307 (1970), *aff'd sub nom.*, *General Telephone Co. v. United States*, 449 F.2d 846 (5th Cir.1971); *see also* 47 U.S.C. § 533 (provision of Cable Communications Policy Act of 1984 codifying this policy). The Commission is obviously not required to review its policy every time a party objects to a telephone company's cable activities on antitrust grounds. Rather, the Commission can proceed as it has here, by applying its rules. *See RVS Cablevision, Inc. v. Wisconsin Bell, Inc.*, FCC No. 84–618, slip op. at 2 (Comm'n Dec. 13, 1984), *reprinted in* J.A. at 514.[4]

Perhaps sensing that its arguments with respect to anticompetitive effect collapse into the question of whether the Commission's rules are satisfied, petitioner contends that Bell violated two such rules, namely sections 63.54 and 63.57. 47 C.F.R. §§ 63.54, 63.57.

█ Section 63.54 requires that there be no affiliation between the telephone company and the cable operator that leases distribution services from the telephone company, save for the lease itself. Petitioner alleges that Bell has violated this rule because it has a secret kick-back agreement with the cable operator and because the lease arrangement premises Bell's compensation on the number of subscribers in the cable operator's stable. The Commission responds that both contentions are unsubstantiated either by fact or precedent. We agree.[5]

█ Section 63.57 requires that a section 214 applicant show that prior to the cable operator's decision to seek the cable franchise predicated on a lease arrangement, the operator was aware of the right to build its own system and make pole attachments. Bell unquestionably made such a showing with respect to its leaseback customer in Brookfield, but petitioner contends that this will not suffice. In petitioner's view, inasmuch as section 63.57 requires that the cable operator know of pole attachment rights *before* seeking a franchise, the section 214 applicant (Bell) must show that all cable companies know of the pole attachment option, because the applicant cannot know which company will ulti-

---

**4.** As noted above, petitioner also complains that the FCC should have designated Bell's section 214 application for a hearing. We reject this contention. As this court has noted time and time again, the FCC's determinations of whether to hold a hearing are entitled to substantial deference. *See, e.g., Health & Medicine Policy Research Group v. FCC*, 807 F.2d 1038, 1045 n. 10 (D.C.Cir.1986). We can see nothing to be gained by a hearing, especially with the federal district court litigation still underway in Wisconsin.

**5.** The solitary item of evidence pointing to the existence of the purported kick-back scheme was the unsubstantiated deposition testimony of a contractor who had been spurned by Bell's leaseback customer. Bell filed an affidavit denying the scheme. Under these circumstances, the Commission reasonably declined to give the allegations sufficient weight to require further inquiry. Petitioner offered even less support for its claim that the payment arrangement amounted to an improper joint venture, citing no Commission rule or precedent invalidating the type of compensation plan employed by Bell.

mately receive the franchise. Thus, the argument goes, Bell must also show that it made the pole attachments option available to petitioner, a showing petitioner alleges cannot be made for the simple reason that Bell denied it pole attachments. The Commission rejected this argument and we agree. Petitioner's claim borders on the ludicrous, but it suffices for our purposes here to observe that section 63.57 requires only that the cable company be *aware* of pole attachment rights, not necessarily actually receive pole attachments. Petitioner certainly was aware of these rights and thus, even under petitioner's convoluted if not bizarre construction, section 63.57 is satisfied.

■ Finally, petitioner argues that the Commission's proceedings were tainted by numerous *ex parte* contacts. The argument is frivolous. As the Commission pointed out, because neither the section 224 nor the section 214 proceedings had been designated for a hearing, the Commission's rules did not prohibit *ex parte* contacts. *See RVS Cablevision, Inc. v. Wisconsin Bell, Inc.*, FCC No. 85–348, slip op. at 2–3 (Comm'n July 11, 1985), *reprinted in* J.A. at 531. Recognizing this, petitioner now argues that "basic fairness" prohibits *ex parte* contacts of the type occurring here. We disagree. To begin with, the communications at issue are merely letters, not detailed submissions. Most of them came from non-parties, primarily elected officials, including two United States Senators. Moreover, all such communications were promptly placed in the public file and made known to petitioner. Thus, no harm has fallen upon petitioner from the letters it now bewails. Under these circumstances, the *ex parte* contacts provide no ground for invalidating the FCC's decision. *Cf. PATCO v. FLRA*, 685 F.2d 547, 565 & n. 32 (D.C. Cir.1982) (setting out factors to aid determination of whether *prohibited ex parte* communications require voiding agency decision).

In sum, all of petitioner's attacks on the Commission's decisions fail. The rulings reflect reasoned decisionmaking and are

amply supported by the record. Accordingly, the petition for review is

*Denied.*